Hattie **FREEMAN**, Appellant,

v.

Bobby Joe **FREEMAN**, Appellee.

No. 5088.

Court of Civil Appeals of Texas, Eastland.

July 27, 1978.

Thomas R. Fox, Garland, for appellant.

C. R. Dickenson, Abilene, for appellee.

BRADBURY, Justice.

Hattie Freeman, appellant, her children and the children of a deceased child sued appellee, Bobby Joe Freeman, independent executor of the estate of Oliver T. Freeman, for specific performance of an alleged contract which they argue was embodied in a joint and mutual will. Oliver T. Freeman and Hattie Freeman, husband and wife, on April 4, 1966, executed a joint will and in effect left to the survivor of them a life estate and on the death of the survivor their estates would pass to their children in equal shares. Both Hattie Freeman and Oliver T. Freeman had been previously married to other parties and had children by such previous marriages. May 31, 1967, Oliver T. Freeman, without notice to his wife made a new will leaving his separate estate and his interest in the community property to his children and leaving to his wife a life estate in certain oil payments. The trial court rendered judgment for appellee and we affirm.

Appellant argues that the joint will of April 4, 1966, was mutually made in furtherance of an agreement between the parties and her husband in making a new will without notice to her breached the agreement.

The question we must decide is whether Oliver T. Freeman had the right, without notice to his wife, to revoke the will while he and his wife were both alive.

Appellant cites *Morris v. Texas Elks Crippled Children's Hospital, Inc.,* 525 S.W.2d 874 (Tex.Civ.App.—El Paso 1975, writ ref. n. r. e.); *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165 (1946); *Harrell v. Hickman,* 147 Tex. 396, 215 S.W.2d 876 (1948); *Murphy v. Slaton,* 273 S.W.2d 588 (Tex. 1954); and, *Dougherty v. Humphrey,* 424 S.W.2d 617 (Tex.1968). These cases in effect hold that a will can be established as contractual from the provisions of the will itself. In the instant case, on oral argument, appellant agreed there was no extraneous evidence that the parties had made an agreement not to change the will but argues that the provisions of the will are sufficient to establish such agreement. She further argues that the trial court found, "There was no competent proof of any alleged contract to refrain from revocation of the joint and mutual will which was executed in 1966", and insists from that finding that the court in effect found that the will in question was a mutual will.

"A joint will is a single testamentary instrument which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or severally by them. A mutual will is one executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other. If the testators name each other as beneficiaries, the wills are reciprocal. Two or more wills may be mutual without being joint. A joint and mutual will must be the will of two or more persons contained in a single testamentary instrument, jointly executed by them pursuant to an agreement to dispose of their respective estates to each other or to third parties." Vaughan, "The Joint and Mutual Will," 16 Baylor L.Rev. 167 (1964).

In *Weidner v. Crowther,* 157 Tex. 240, 301 S.W.2d 621 (1957), the court stated, "At the heart of a mutual will lies a contract of the

parties." In *Morris v. Texas Elks Crippled Children's Hospital, Inc.*, supra, the court said:

"Nevertheless, the will may, by its terms or in its recitals, conclusively prove that it is based upon or was executed in furtherance of an agreement. This is particularly true where the joint will speaks in all of its paragraphs as the joint act of the testators and where it treats the property of the testators as one, with joint gifts being made to the devisees . . ."

If we assume the will is mutual nevertheless, being ambulatory, either party had the right to revoke it.

Appellant in her brief relies principally on those cases that hold in a mutual will context that if one of the makers dies the other party is prohibited from revoking the contractual obligations of the will. In *Weidner v. Crowther*, supra, the court stated:

". . . It would be manifestly unjust to permit the surviving party to the contract to disavow it and its obligations, as those obligations are incorporated in their will, after the other party has fully performed by abiding by it until his ability to revise it has been terminated by death."

The facts in the instant case are different. Appellant on the death of her husband had notice that he had changed his will. No property had passed from her to him and he had not undertaken in his will to dispose of any of her property.

Our Supreme Court in *Magids v. American Title Insurance Company, Miami, Florida*, 473 S.W.2d 460 (Tex.1971) stated:

". . . To begin with, the prevailing rule is that wills, as distinguished from binding contracts, are revocable. By their very nature, wills dispose of property at the time of death, and not before; until then, they are ambulatory in the sense that they may be changed or revoked as long as the living testators are sui juris; and this has been held to be true even with respect to mutual wills made pursuant to binding contracts for disposition of property in a certain man-

ner. *Tips v. Yancey*, 431 S.W.2d 763 (Tex.Sup.1968); *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d 588 (1954); *Wyche v. Clapp*, 43 Tex. 543 (1875); Bailey, Wills, 10 Texas Practice, § 470, 197–200. These and other Texas authorities make a clear distinction between the wills themselves and any underlying irrevocable contracts to dispose of property at death. If the same document contains both the will and the contract, 'it is the contractual portion of the will and not the will itself which is irrevocable.' *Kirk v. Beard,* 162 Tex. 144, 345 S.W.2d 267, 272 (1961); The Joint and Mutual Will, XVI Baylor L.R. 167 (1964); Sparks, Contracts to Make Wills (N.Y. Univ.Press, 1956), 5–6, 20–21, 111–123; I Page of Wills (Third Lifetime Edition) 158–160, 228.

. . . Thus, it is legally possible for a husband and wife, if they so desire, to enter into a contract for disposition to their children of the remainder interest in community property owned by them at the death of the first to die. If they so contract, and the wills made pursuant thereto remain in effect at the death of one of them, the result is to place the survivor's ½ fee ownership beyond his power to otherwise effectively dispose of the remainder interest by deed or will. *Weidner v. Crowther*, 157 Tex. 240, 301 S.W.2d 621 (1957); *Murphy v. Slaton,* supra; *Chadwick v. Bristow*, 146 Tex. 481, 208 S.W.2d 888 (1948); *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165 (1946). However, contracts of this nature are reviewed by the courts with caution; they can be established only by full and satisfactory proof; and no presumptions or inferences will be indulged in favor of them. *Kirk v. Beard,* supra, 162 Tex. 144, 345 S.W.2d at 272, Sparks, Contracts to Make Wills, supra, 24–38 . . ."

The principle of law involved here is similar to that involved in *Meyer v. Texas National Bank of Commerce of Houston*, 424 S.W.2d 417 (Tex.1968). Alpha Genevieve Meyer executed her will on January 10, 1944, leaving all of her estate to her hus-

band with no provision for the vesting of the property if he predeceased her in death. Six months later, her husband, Joseph F. Meyer, Jr., made a similar will in favor of his wife. About eighteen years later, Joseph Meyer executed a new will making a different disposition of his estate than was provided in his original will. Shortly thereafter, he died at which time his wife for the first time knew about her husband having made a new will. She did not change her will and soon thereafter died. The representatives of her estate brought suit to enforce an alleged oral agreement between husband and wife to leave each of their estates to the survivor. The court stated that, "None of the property of Alpha Meyer passed under the will of her husband.", and in discussing *Kirk v. Beard,* 162 Tex. 144, 345 S.W.2d 267 (1961), the court stated:

"In *Kirk v. Beard,* property passed from one of the contracting parties to the other, and it was held that it would be a fraud to permit the one who had received property from the other party to thereafter repudiate the contract. An intervention by equity was hence deemed supportable."

The Courts in *Meyer* and *Weidner,* supra, reasoned that it would be unfair to permit a surviving party to a contract to change the obligations after the deceased party fully performs by abiding with the contract until his death.

There was no agreement within the will itself that would prohibit either party from revoking or changing it. An oral agreement to the effect that neither party would revoke or change his or her will without notice to the other would be in contravention of the Statute of Frauds and unenforceable unless there is part performance of the contract. *Meyer v. Texas National Bank of Commerce of Houston,* supra. The principle laid down in *Kirk v. Beard,* supra, is not applicable here because in that case one of the parties had died and the survivor had received benefits under the will of the decedent. There was such part performance as to remove the agreement from the Statute of Frauds. In the instant case, the trial court found that there was no enforceable contract between the parties not to change the contractual provisions of the April 4, 1966 will without notice to the other party. The will itself had no such provisions. There was not part performance that would remove it from the operation of the Statute of Frauds. *Meyer v. Texas National Bank of Commerce of Houston,* supra. We hold, where there is not an enforceable contract to the contrary, and no fraud, that either party to a mutual will, has a right to execute a new will without notice to the other party when both parties are still alive and the other party is sui juris. That being the situation in this case, we affirm the judgment of the trial court.